**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **DREKA SWAN, et al.** | * | |
| | * | |
| Plaintiffs | * | |
| | * | |
| v. | * | Civil No. **PJM 14-1906** |
| | * | |
| **SANTANDER CONSUMER USA** | * | |
| | * | |
| Defendant | * | |
| | * | |

**MEMORANDUM OPINION**

Dreka Swan and Melinda Hairston ("Plaintiffs") have sued Santander Consumer USA ("Santander") for violating the notice requirements of the Credit Grantor Closed End Credit provisions of Maryland Commercial Law Code section 12-1021; for breach of contract; for seeking deficiencies from defaulting borrowers in violation of Maryland Commercial Law Code section 12-1018; and for violating provisions of the Maryland Consumer Debt Collection Act, Maryland Commercial Law Code section 14-202. Plaintiffs seek to represent a class of all Maryland residents whose cars were repossessed by Santander on or after May 1, 2011. Plaintiffs have filed a Motion to Remand to State Court, ECF No. 10, which Santander opposes. Santander has also filed a Motion to Compel Non-Class Arbitration and Stay Proceedings, ECF No. 5, which Plaintiffs oppose. For the following reasons, the Court **DENIES** Plaintiffs' Motion to Remand to State Court, and **GRANTS** Santander's Motion to Compel Non-Class Arbitration and Stay Proceedings.

**A.**

**Factual and Procedural Background**

Plaintiffs are a mother and daughter residing in Charles County who financed the purchase of a new car in 2008 from a Maryland auto dealer though CitiFinancial Auto Credit. Santander purchased the loan from CitiFinancial sometime in 2010 or 2011. Whether originated by Santander or purchased on a secondary market, Santander's business is to acquire security interests in cars such as the one purchased by Plaintiffs. Santander enforces its security interests by initiating and ordering repossession of the cars owned by buyers who default on their loans, and, in appropriate cases, by filing lawsuits in Maryland seeking deficiency judgments against borrowers following auction sales of the repossessed cars. Plaintiffs allege that in the course of its repossession process, Santander does not provide defaulting borrowers with complete and accurate notices of repossession or of sale, as required by Credit Grantor Closed End Credit provisions of Maryland Commercial Law Code section 12-1021 ("CLEC").

Plaintiffs made a number of monthly payments to CitiFinancial and Santander, but defaulted on the loan after the death of Ms. Swan's father. Plaintiffs allege that Santander repossessed the car, but did not send them prior notice of its intention to repossess the car, did not inform them of the location of the repossessed car, or the date and location of the auction sale, and failed to provide them with complete or accurate information about their rights of redemption.

After the car was sold at auction, Santander sent Plaintiffs a deficiency notice. But Plaintiffs allege that the deficiency notice fails to provide a complete accounting, and seeks to recover sums that are not allowed as a result of earlier notice violations. Plaintiffs allege that two years after the deficiency notice, Plaintiffs received a collection notice from Constar Financial

Services LLC, but that the amounts itemized in the notice differed substantially from those set forth in Santander's earlier deficiency notice. The Complaint in this case is styled as a class action, and seeks judgment on behalf of Plaintiffs and all class members, defined as all Maryland residents whose cars were repossessed by Santander on or after May 1, 2011. *See* Compl. ¶ 20-26, ECF No. 2.

Plaintiffs originally filed the Complaint in the Circuit Court for Charles County, Maryland, against Santander. Santander removed the case to this Court on the basis of diversity jurisdiction under 28 U.S.C § 1332(d), as amended by the Class Action Fairness Act ("CAFA"). ECF No. 1. Within a few days, Santander filed its Motion to Compel Non-Class Arbitration and Stay Proceedings. ECF No. 5. Some ten days later, Plaintiffs filed their Motion to Remand to State Court, ECF No. 10, and the parties requested that the Court first rule on the Motion to Remand before accepting further briefing on the Motion to Compel Arbitration, ECF No. 11. The Court agreed to this request, ECF No. 12, held a hearing on the Motion to Remand, deferred ruling on the Motion to Remand, and directed the parties to submit briefing on the Motion to Compel Non-Class Arbitration and Stay Proceedings, ECF No. 21.

**B.**

The Court considers Plaintiffs' Motion to Remand.

CAFA confers jurisdiction on federal district courts with respect to alleged class actions in which a) the class comprises at least 100 members, 28 U.S.C. § 1332(d)(5)(B); b) any member of the class is a citizen of a state different from any defendant, 28 U.S.C. § 1332(d)(2)(A); and, c) the amount in controversy exceeds $5 million, exclusive of interest and costs, 28 U.S.C. § 1332(d)(2).

Plaintiffs do not contest that the parties are diverse for purposes of CAFA,[1] or that the class is comprised of over 100 members.[2] However, Plaintiffs contest that the amount in controversy exceeds $5 million. Plaintiffs' Complaint, however, does not allege a specific damages amount.[3]

In removing a class action based on diversity jurisdiction under CAFA, the party seeking to invoke federal jurisdiction must allege it in his notice of removal and, when challenged, demonstrate the basis for federal jurisdiction. *See Strawn v. AT&T Mobility LLC*, 530 F.3d 293, 298 (4th Cir. 2008). It is therefore Santander's burden to establish the jurisdictional amount by a preponderance of the evidence.[4]

To determine whether the jurisdictional minimum is satisfied, the district court looks to the aggregated value of class members' claims. *Bartnikowski v. NVR, Inc.*, 307 F. App'x 730,

[1] According to Santander's Notice of Removal, the parties are citizens of different states. Santander is a corporation organized under the laws of Illinois with its principal place of business in Dallas, Texas. Santander is therefore a citizen of the states of Illinois and Texas, is not a citizen of Maryland, and was not a citizen of Maryland at the time the original pleading was filed. ECF No. 1, at 4.

[2] According to Santander's Notice of Removal, based on Plaintiffs' allegations, there are at least 600 putative class members. ECF No. 1, at 3. Santander then revised its estimate upwards, to approximately 15,300. *See* Nightengale Aff., ECF No. 15-1, at 2.

[3] Plaintiffs represent that recent changes to the Maryland Rules would permit only an *ad damnum* allegation of damages "in excess of $75,000." *See* Maryland Rule 2-305(b) ("a demand for money judgment that exceeds $75,000 shall not specify the amount sought, but shall include a general statement that the amount sought exceeds $75,000"). Plaintiffs represent that the class's specific damages amount is not alleged because Rule 2-305(b) would not permit it, and in any event, is a figure only known to Santander. *See* Pl.'s Br., ECF No. 10-1, at 3.

[4] When plaintiffs leave damages unspecified in their complaint, a number of circuits have explicitly adopted a "preponderance of the evidence" standard as the appropriate burden to which removing defendants should be held in proving the amount in controversy. *Bartnikowski v. NVR, Inc.*, 307 F. App'x 730, 734 n.7 (4th Cir. 2009) (citing CAFA cases in the Sixth, Eleventh, and Ninth circuits, and pre-CAFA cases in the Fifth and Eighth circuits). In *Bartnikowski*, a CAFA case, the Fourth Circuit declined to decide whether a more stringent standard would be appropriate, because the defendant failed to meet even a preponderance of the evidence burden. *See id.* The Fourth Circuit has adopted the preponderance standard for non-CAFA removal cases. *See Francis v. Allstate Ins. Co.*, 709 F.3d 362, 367 (4th Cir. 2013). Other district courts in the Fourth Circuit have applied the preponderance standard in CAFA cases, *see, e.g.*, *Strawn v. AT & T Mobility, Inc.*, 513 F. Supp. 2d 599, 604 (S.D.W. Va. 2007), *rev'd on other grounds*, 530 F.3d 293 (4th Cir. 2008); *Alig v. Quicken Loans, Inc.*, 902 F. Supp. 2d 789, 792 (N.D.W. Va. 2012) *vacated and remanded on other grounds*, 737 F.3d 960 (4th Cir. 2013). The Supreme Court recently assumed, without deciding, that the section of the removal statute that contains the preponderance standard also applies to removals under CAFA, *see Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 n.1 (2014) (assuming without deciding that Sections 1446(c)(2) and 1446(c)(2)(B) apply to cases removed under section 1332(d)(2), and that removal is proper if the amount in controversy exceeds $5 million, the amount specified in section 1332(d)(2)).

734 (4th Cir. 2009). In Santander's Notice of Removal, Santander points out that, among their other claims, Plaintiffs allege a violation of the CLEC's notice requirements. Upon a violation of the CLEC, the civil penalties provisions of the CLEC provide that the credit grantor may not collect any interest, costs, fees and other charges, and may be required to forfeit three times the amount of those charges collected. *See* Def.'s Notice of Removal, ECF No. 1, at 3 (citing Md. Code Ann., Com. Law § 12-1018(a)(2), (b)). Santander represents that Plaintiffs incurred finance charges, fees, and costs of approximately $8500. *See id.* Santander argues that with at least 600 class members, and with these class members incurring finance charges, fees, and costs in an amount similar to the amount incurred by Plaintiffs, the amount of damages sought by Plaintiffs exceeds $5 million.[5] In an affidavit attached to Santander's Response in Opposition to the Motion to Remand, Santander revised its estimate upwards, representing that between May 1, 2011 and July 15, 2014, the number of Maryland residents whose cars were repossessed by or on behalf of Santander is approximately 15,300, and that the average finance charge incurred on the accounts of Maryland residents whose cars were repossessed by Santander in that time frame was approximately $6900. *See* Nightengale Aff., ECF No. 15-1, at 2. Santander therefore concludes that Plaintiffs' claim regarding violations of the CLEC notice requirement involves over $100 million in controversy. This estimate, says Santander, does not include the possibility of treble damages, or other damages sought by Plaintiffs for breach of contract and violation of the Maryland Debt Collection Act.

Plaintiffs do not contest Santander's data or calculations. Instead, they argue that Santander's focus on finance charges, fees, and costs "incurred" or "charged" is misplaced. In their Complaint, Plaintiffs seek civil penalties for Santander's deliberate violation of the CLEC: "treble damages under §12-1018 of the Maryland Commercial Code, including three times the

[5] 600 class members multiplied by $8500 in average damages equals $5.1 million.

amount of interest, fees, and othis [sic] charges collected by Santander." Compl. ¶ 48 (emphasis added). Under the civil penalties provision of the CLEC, "if a credit grantor violates any provision of [the CLEC] the credit grantor may collect only the principal amount of the loan and may not collect any interest, costs, fees, or other charges with respect to the loan." Md. Code Ann., Com. Law § 12-1018(a)(2) (emphasis added). Similarly, the treble damages provision states that the credit grantor shall forfeit to the borrower three times the amount of interest, fees, and charges collected in excess of that authorized by [the CLEC]." Md. Code Ann., Com. Law § 12-1018(b) (emphasis added). Plaintiffs argue that their claims under this count are for interest, fees, and charges collected—*e.g.*, actually paid—to Santander, rather than charges incurred—*e.g.*, owed—to Santander. Accordingly, the amount in controversy for CAFA purposes should not include the total finance charges, fees, and costs owed by all the class members, but rather only the total finance charges, fees, and costs paid by class members to Santander. Because Santander's estimate of $6900 in average financing charges incurred does not indicate the average amount of money that Santander has actually collected, Plaintiffs argue that Santander has not proffered evidence sufficient to meet their burden under the preponderance standard.

The Court disagrees with Plaintiffs. As the Ninth Circuit recently held, the amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability. *See Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010).[6]

[6] In *Lewis*, the plaintiff alleged that she and the other putative class members were being billed by the defendant cellular phone company for premium services that they never ordered. To support removal, the defendant submitted an affidavit that its total billings for all premium services exceeded $5 million. *See* 627 F.3d at 399. The district court held that because the complaint only claimed liability for premium services that were "unauthorized," the total billings submitted by the defendant—which could include both authorized and unauthorized charges—failed to meet its burden to show the amount in controversy exceeded the jurisdictional amount. *See id.* at 400. The Ninth Circuit reversed, noting that there was no evidence to support the district court's assumption that total billings could include both authorized and unauthorized charges, and that the plaintiff failed to attempt to establish that the class recovery is potentially any less than $5 million. *See id.* at 400-01.

Here, Santander has represented that the average finance charge incurred on the accounts of Maryland residents whose cars were repossessed by Santander in the relevant time period was approximately $6900, which Plaintiffs do not contest. Plaintiffs are left to argue that "many likely paid far less in interest and cost to Santander" and note that Santander could have performed a "'ministerial determination' and provided the interest, fees, and charges it has collected from the class." Pl.'s Br., ECF No. 10-1, at 4, 10. Plaintiffs' argument, in essence, is that Santander has failed to demonstrate the amount in controversy by a preponderance of the evidence simply because the average amount of finance charges actually collected *could* be less than the average amount billed, and that amount *could* be less than $5 million. But Plaintiffs have failed to even attempt, in contrast, to establish that class recovery is potentially any less than $5 million; for example, Plaintiffs did not even attempt to demonstrate how much interest, fees, and charges they themselves actually paid to Santander. Nor are Plaintiffs' suppositions likely: the Court observes that in order for the finance charges collected among the 15,300 putative class members to total less than $5 million, the average finance charge collected must be less than $327 per class member. If this were true, Santander would have collected less than 5% of the $6900 finance charge that the average class member incurred. And this calculation, like Santander's calculations above, does not include the possibility of treble damages, or other damages sought by Plaintiffs for breach of contract and for violation of the Maryland Debt Collection Act.

Accordingly, the Court finds that Santander has established the jurisdictional amount by a preponderance of the evidence. Plaintiffs' Motion to Remand, ECF No. 10, is **DENIED**.

**C.**

The Court now turns to Santander's Motion to Compel Non-Class Arbitration and Stay Proceedings.

When Plaintiffs financed their car purchase though CitiFinancial Auto Credit, Plaintiffs executed a Retail Installment Sales Contract ("the Agreement") that contained an arbitration clause. Santander subsequently acquired the Agreement. Santander now moves to enforce the arbitration clause and compel arbitration of all disputes raised in the Complaint on a non-class basis. The Agreement provides that any arbitration shall be governed by the Federal Arbitration Act, and that the contract shall be governed by the laws of the State of Maryland. ECF No. 24-1, at ¶ 20, 21.

Plaintiffs do not contest that the disputes in the Complaint fall within the scope of the arbitration clause, or that the Federal Arbitration Act applies to the clause. Rather, Plaintiffs argue that the arbitration clause in this case, or some portion of it, is unenforceable because it runs afoul of generally applicable state contract law. *See Gay v. CreditInform*, 511 F.3d 369, 388 (3d Cir. 2007) ("[N]otwithstanding the supremacy of federal law, courts repeatedly have held that 'in interpreting [arbitration] agreements, federal courts may apply state law, pursuant to section two of the FAA.'") (brackets in original); *Hill v. PeopleSoft USA, Inc.*, 412 F.3d 540, 543 (4th Cir. 2005) (applying Maryland law in analyzing the validity of an arbitration contract).

Plaintiffs argue that the arbitration clause is unenforceable because it lacks mutuality, or in the alternative, argue that the contract is substantively unconscionable because it gives Santander a unilateral right to take actions to protect its interests. Both of Plaintiffs' arguments hinge on their interpretation of two provisions of the Agreement.

The "Arbitration Provision" provides, in pertinent part, as follows:

> Any claim or dispute, whether in contract, tort, or otherwise (including any dispute over the interpretation, scope, or validity of this contract, arbitration, or the arbitrability of any issue), between you and us [ . . . ] shall, at the election of either you or us, [ . . . ] be resolved by a neutral, binding arbitration and not by a court action. Any claim or dispute is to be arbitrated on an individual basis and not as a class action.

ECF No. 24-1, at ¶ 21.

The "Default Provision" provides as follows:

> You [the borrower] will be in default and <u>we [Santander] may terminate this contract early</u> if:
> (a) you have given false or misleading information on your credit application;
> (b) <u>you do not make a payment when it is due;</u>
> (c) a lien or other claim is made against this contract or the vehicle;
> (d) a bankruptcy petition is filed by or against you;
> (e) the vehicle is seized by any local, state, or federal government or authority;
> (f) you alter or fail to repair or maintain the vehicle as required;
> (g) you do not maintain the required insurance;
> (h) <u>you do not comply with any of the contract terms; and/or</u>
> (i) <u>you breach any promise, representation or warranty you have made in this contract.</u>
> [ . . . ]
> If you default, we may:
> Require you to pay the unpaid Amount Financed, the earned and unpaid part of the Finance Charge, and all other amounts due; <u>sue you to collect the amount you owe</u>; without the use of force or other breach of the peace, enter or have anyone we choose enter the premises where the vehicle may be and, lawfully repossess (take back) the vehicle, including equipment and accessories
> [ . . . ]
> If we repossess the vehicle, and we are not precluded by law, we will send you a notice stating that you may redeem the vehicle and the amount needed to redeem. To redeem the vehicle, you must pay us the net amount owed under the contract plus all collection and legal costs, including reasonable attorney fees as provided above <u>and court costs,</u> to the extent permitted by applicable law.

ECF No. 24-1, at ¶ 12 (emphasis added).

Plaintiffs argue that, considered within the context of the contract as a whole, the Default Provision explicitly and exclusively reserves to Santander a unilateral right to sue its borrowers in court for any "default." A "default," in turn, constitutes any breach of the agreement by

borrowers. By contrast, the Default Provision does not, by its plain terms, afford any such rights to borrowers: it sets forth conditions under which "you" (the borrower) will be in default and for which "we" (Santander) may terminate the contract. As a result, Plaintiffs argue, borrowers are restricted to the remedies available in the Arbitration Provision, which gives Santander the option to elect to arbitrate any claim or dispute that the borrower brings against Santander. In so doing, the contract functions to bind only the borrower to arbitration, while affording Santander both court and arbitral fora to resolve its claims. This lack of mutuality, argue the Plaintiffs, renders Santander's promise to arbitrate insufficient to support an enforceable agreement to arbitrate. Alternatively, this lack of mutuality makes the contract substantively unconscionable.

Santander argues that Plaintiffs' proffered interpretation of the two contract provisions is incorrect. In particular, the Default Provision does not alter the plain terms of the Arbitration Provision, which provides that if one party files suit and the other elects to arbitrate, then the claims must proceed to arbitration. Put another way, if Santander "sue[s] [a borrower] to collect the amount [the borrower] owe[s]" because the borrower has "defaulted," the borrower may elect to arbitrate the dispute, and the claim must proceed to arbitration. "Neither the 'Default' provision nor the arbitration Agreement itself purports to grant Santander an unlimited right to file suit in court for any claim against the borrower or to eliminate any obligation of Santander to arbitrate in the event a borrower elects arbitration." Def.'s Reply Br., ECF No. 24, at 6. Accordingly, Santander concludes, there is no lack of mutuality of obligation; the borrower has just as much right as Santander to elect to arbitrate a claim or dispute that arises between the parties.[7]

[7] Swan argues that if asked, it is "virtually certain that Santander would have to admit that it never arbitrated a single post-default deficiency claim in Maryland." Pl.'s Br., ECF No. 23, at 5 n.5. But even if true, this fact would not alter the Court's conclusion that, under the contract, Santander would have to arbitrate a post-default deficiency claim if the borrower elected arbitration.

The Court finds that Santander's interpretation is the better reading of the contract. The Arbitration Provision covers "[a]ny claim or dispute, whether in contract, tort, or otherwise (including any dispute over the interpretation, scope, or validity of this contract, arbitration, or the arbitrability of any issue)[.]" The occurrence or nonoccurrence of any conditions of default enumerated in the Default Provision must constitute "dispute[s]" that would fall under the Arbitration Provision. If Santander were to declare a borrower in default for the failure to "comply with any of the contract terms," and the borrower disagreed with Santander's position, it is difficult to imagine how such a situation could not be construed as a "dispute . . . in contract" under the meaning of the Arbitration Provision.

The fact that Santander "may terminate [the] contract early" in response to the occurrence of one of the conditions of default does not eliminate Santander's obligations under the Arbitration Provision. Indeed, whether or not the contract is in fact terminated because of the occurrence of one of the default conditions must itself constitute a "claim or dispute . . . in contract" or a "dispute over the interpretation, scope, or validity of [the] contract" covered by the Arbitration Provision. The same is true of whether Santander is in fact owed money or entitled to repossess the vehicle as a result of the occurrence of one of the default conditions.[8]

---

[8] Santander argues, in the alternative, that the Default Provision could be deemed to carve out from the Arbitration Provision a limited right of Santander to "sue" the borrower. This limited right would only be a right to "sue [the borrower] to collect the amount [that the borrower] owe[s]. "[I]n no event would claims <u>other than collection</u> be excepted from arbitration." Def.'s Reply Br., ECF No. 24, at 6 (emphasis in original). Accordingly, argues Santander, per the Maryland Court of Appeals decision *Walther v. Sovereign Bank*, such a limited exception allowing the lender "to litigate certain specific claims instead of having to submit them to arbitration" does not make the arbitration provision "illusory." *Id.* (citing 386 Md. 412, 433 (2005)).The Court finds no reason to construe the Default Provision as a "carve out" from the Arbitration Provision giving Santander a unilateral, limited right to file lawsuits to collect from borrowers. Maryland law provides a mechanism by which an arbitration award can be confirmed by a court. Md. Code Ann., Cts. & Jud. Proc. § 3-227(a). If an order confirming, modifying, or correcting an award is granted, a judgment shall be entered in conformity with the order, and the judgment may be enforced as any other judgment. Md. Code Ann., Cts. & Jud. Proc. § 3-228(a)(1)-(2). In other words, Santander can declare a borrower to be in default, and sue them in court to collect the debt. But if the borrower elects to arbitrate Santander's claim as to the borrower's default, Santander must agree to arbitrate the matter. If the arbiter finds for Santander, and issues an award in Santander's favor, Santander may petition a court to enforce the arbitral award. Once the court's judgment confirming the award is granted, Santander may enforce that judgment as any other judgment.

Because the Court concludes that the contract does not give Santander a unilateral right to take actions to protect its interests, but provides comparable rights to vehicle owners, the Court concludes that the contract is not substantively unconscionable. It is therefore not necessary for the Court to reach the issue of whether the contract is also procedurally unconscionable.

Accordingly, Santander's Motion to Compel Non-Class Arbitration and Stay Proceedings, ECF No. 5, is **GRANTED**.

A separate Order will **ISSUE**.

**/s/**

**PETER J. MESSITTE**
**UNITED STATES DISTRICT JUDGE**

**March 17, 2015**

Accordingly, the Arbitration Provision already provides a means by which courts can enforce an arbitral award; there is no reason why the Default Provision should be read to create a separate carve-out that allows only Santander to circumvent the Arbitration Provision in order to collect debts from borrowers. Because the Default Provision is not a carve-out from the Arbitration Provision, there is no need for the Court to consider the applicability of the *Walther* holding to the instant case—which, unlike *Walther*, does not involve foreclosure.